# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BASIMA KHALIL MAHMOUD,<br><br>    Plaintiff,<br><br>    v.<br><br>THE VANGUARD GROUP, INC. and VANGUARD MARKETING CORPORATION,<br><br>    Defendants. | Case No. 1:14-cv-08887<br><br>Judge John Robert Blakey |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS

Defendants The Vanguard Group, Inc. and Vanguard Marketing Corporation (collectively, "Vanguard") respectfully submit this Memorandum of Law in Support of Their Motion for Judgment on the Pleadings.

## INTRODUCTION

Plaintiff filed this action to litigate a narrow legal question: whether she is entitled to an assignment of her ex-husband's pension benefits *in the form of a single, lump-sum payment*. However, as the Second Amended Complaint ("SAC"), the Answer to the SAC, and the documents attached or referenced in those pleadings demonstrate, the clear answer to that question is no. These materials confirm that—just as Vanguard has repeatedly explained to plaintiff and her counsel through detailed communications dating back to 2012—the governing pension plan document makes clear that the assignment of benefits she seeks can be paid *only* in the form of monthly annuity payments continuing for life. Accordingly, the Court should enter judgment in favor of Vanguard under Rule 12(c) and dismiss the SAC with prejudice.

In her three-count SAC, plaintiff asserts two theories under the Employee Retirement Income Security Act ("ERISA"). First, invoking 29 U.S.C. § 1132(a)(1)(B), she claims she is entitled to a lump-sum form of benefit under the Retirement Income Plan of the Saudi Arabian Oil Company (the "Plan") based on a June 22, 2012 domestic relations order issued after her November 2011 divorce from Plan participant, Rushdi Hussain Muammar. SAC ¶¶25, 28-32 (Counts I-II). Second, she claims that Vanguard breached its (alleged) fiduciary duties by allowing Muammar—*before the divorce*—to elect and begin receiving monthly annuity payments under the Plan and by failing thereafter to honor the June 22, 2012 domestic relations order. *Id.* ¶¶15-19, 33-37 (Count III). Both of these theories fail as a matter of law.

Plaintiff's first theory fails because the Plan forecloses the lump-sum form of benefit she seeks. The Plan expressly provides that, once a participant elects and begins receiving his or her benefits in the form of annuity payments, no other form of benefit (*e.g.*, a lump-sum) may be elected. The pleadings and documents attached thereto show that Muammar elected and began receiving annuity payments under the Plan in June and July 2011—several months *before* plaintiff's divorce and subsequent domestic relations order. As such, the Plan precludes plaintiff from receiving those benefits now in a lump-sum form. *See, e.g.*, *Senese v. Chicago Area I.B. of T. Pension Fund*, 237 F.3d 819, 825 (7th Cir. 2001) (a claim for benefits under 29 U.S.C. § 1132(a)(1)(B) is "limited to recovering only the benefits specified in the plan").

The June 22, 2012 domestic relations order does not change the analysis. Section 206 of ERISA absolutely bars the assignment or alienation of a plan participant's pension benefits, except in the case of a "*qualified* domestic relations order." 29 U.S.C. §§ 1056(d)(1)-(3). Because the pleadings establish that the June 22, 2012 order was not a *qualified* domestic relations order under ERISA—as Vanguard repeatedly explained to plaintiff and her counsel

long before this lawsuit was filed—it has no legal effect on the Plan and thus cannot support a plausible claim under § 1132(a)(1)(B). Thus, both Count I and Count II, which merely seeks a declaratory judgment based on the same flawed theory, fail as a matter of law.

Plaintiff's fiduciary breach claims in Count III likewise fail. First, plaintiff claims that Vanguard breached its alleged fiduciary duties by "allowing" Muammar to elect and receive annuity payments under the Plan "at some point between November 11, 2011 and October 1, 2012." SAC ¶19. However, as noted above, documents attached to the pleadings demonstrate that Muammar elected and began receiving annuity payments *months earlier* in June and July 2011. *See, e.g.*, *Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 466 (7th Cir. 2007) (documents attached to pleadings "trump the facts or allegations presented in the complaint"). Second, plaintiff's contention that Vanguard breached by failing to honor the June 22, 2012 domestic relations order fails because the order was not a *qualified* domestic relations order, and thus Vanguard was *forbidden* by ERISA and the Plan from effectuating it.

For these reasons, discussed further below, Vanguard respectfully submits that the Court should enter a judgment disposing of plaintiff's claims pursuant to Rule 12(c).

## FACTUAL BACKGROUND

**I.     Vanguard Is the Third-Party Qualified Domestic Relations Order Administrator for the Retirement Income Plan of Saudi Arabian Oil Company.**

The Plan is a defined benefit plan with the meaning of ERISA. *See* 29 U.S.C. § 1002(35); *see also, e.g.*, Ex. A, Plan § 8.08.[1] Like all pension plans, it is subject to ERISA's anti-alienation provisions, which strictly prohibit the assignment or alienation of a plan-

---

[1]   The Plan is properly considered on this motion because it is a document to which the SAC refers, *id.* ¶¶6-13, 32; it is central to the plaintiff's claims for benefits under the Plan, *see id.*; and there is no dispute as to its authenticity. *See, e.g.*, *Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009).

participant's pension benefits. 29 U.S.C. § 1056(d)(1). The only exception to this rule is for the assignment of pension benefits to a participant's child, dependent, or former spouse pursuant to a "qualified domestic relations order," § 1056(d)(3)(A), or "QDRO."

A QDRO is a special type of domestic relations order,[2] which ERISA narrowly defines. A domestic relations order is a QDRO "only if" it "clearly" satisfies a number of technical and substantive requirements. 29 U.S.C. § 1056(d)(3)(B)-(D). The technical requirements include that the order "creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan," § 1056(d)(3)(B)(i)(I), and in doing so "clearly specifies—"

    (i)    the name and last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,

    (ii)    the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,

    (iii)    the number of payments or period to which such order applies, and

    (iv)    each plan to which such order applies.

§ 1056(d)(3)(C)(i)-(iv). The substantive requirements are satisfied "only if" the order:

    (i)    does *not* require a plan to provide any type or form of benefit, or any option, not otherwise provided under the plan,

    (ii)    does *not* require the plan to provide increased benefits (determined on the basis of actuarial value), and

    (iii)    does *not* require the payment of benefits to an alternate payee which are required to be paid to another alternate payee under another order previously determined to be a [QDRO].

---

[2] The term "domestic relations order" means "any judgment, decree, or order (including approval of a property settlement agreement) which . . . relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant, and is made pursuant to a State domestic relations law (including a community property law)." 29 U.S.C. § 1056(d)(3)(B)(ii)(I)-(II).

4

§ 1056(d)(3)(D)(i)-(iii) (emphasis added).  Thus, even if the technical requirements are satisfied, a domestic relations order is *not* a QDRO if it provides a benefit *form*, *option*, or *amount* beyond what is then available to a participant or beneficiary under the plan.  *Id.*

ERISA further requires that all pension plans establish reasonable, written procedures to evaluate whether a given domestic relations order meets each of the technical and substantive QDRO requirements.  29 U.S.C. § 1056(d)(3)(G)(ii)(I)-(III).  To that end, the Plan retained Vanguard as a third-party administrator responsible for "perform[ing] ministerial functions as described" in the Plan's QDRO procedures, which are specifically referenced in the SAC and attached hereto as Exhibit B.  *See, e.g.*, SAC ¶¶14, 21 (referencing the Plan's QDRO procedures); Answ. to SAC ¶¶14, 21, & Add'l Defenses ¶3 (same); Ex. B, QDRO Procedures at p. 1 (identifying Vanguard as third-party administrator of the Plan's QDRO procedures).[3]

## II. The Plan Barred the Election of Lump-Sum Benefits as of July 1, 2011.

Plan benefits accrue in the form of a lifetime annuity, with monthly payments beginning upon retirement.  Ex. A, Plan §§ 3.01, 4.03(a).  Before the date benefits commence, the Plan allows participants to elect to receive their benefits in the form of (1) lifetime annuity payments or (2) a single, lump-sum payment representing the actuarial equivalent of those annuity payments.  *Id.* §§ 4.01-4.05.  However, "[i]n no event may an election be revoked or changed in any manner whatsoever after the date [benefit] payments commence."  *Id.* § 4.01(a).

On June 14, 2011, plaintiff's then-husband, Rushdi Hussain Muammar, formally elected to receive his benefits in the form of a "100% Joint and Survivor Annuity."  Answ. to SAC ¶19 & Add'l Defenses ¶3; Answ. to SAC, Ex. 4, Plan Benefit Election Form at ECF p. 4.  Pursuant to his election and the Plan, Muammar's monthly annuity payments of $4,366.94 commenced

---

[3]  For the same reasons noted with respect to the Plan, *see supra* at 3 n.1, the Court may properly consider the attached QDRO Procedures in ruling on this motion.

effective July 1, 2011.  Answ. to SAC, Ex. 4 at ECF p. 3.  Consequently, as of July 1, 2011, benefits associated with Muammar's account could "[i]n no event" be paid in a lump-sum form.  Ex. A, Plan § 4.01(a).

### III. Plaintiff and Muammar Divorce in November 2011, and Plaintiff Seeks an Assignment of Plan Benefits Pursuant to a June 2012 Domestic Relations Order.

On November 4, 2011, several months after Muammar elected and began receiving monthly annuity payments under the Plan, he and plaintiff divorced.  SAC ¶11.  On June 22, 2012, plaintiff submitted to Vanguard a domestic relations order purporting to award plaintiff "an amount equal to 100% per month of [Muammar's] Accrued Benefit [under the Plan] as of June 30, 2011."  SAC, Ex. 4 at ECF pp. 2-3.[4]  The June 22, 2012 order made clear that it could "not require the Plan to provide" to plaintiff "any type or form of benefit, or any option, not otherwise provided for under the Plan," or entitle plaintiff to "increased benefits" under the Plan, and that, "in the event of a conflict between the [order and the Plan,] the terms of the Plan shall prevail."  *Id.* at ECF pp. 5-6.

On July 6, 2012, Vanguard sent plaintiff an initial notice indicating that the June 22, 2012 domestic relations order satisfied the statutory QDRO requirements.  SAC ¶17 & Ex. 5.  However, because this notification was in error, Vanguard issued a corrective notice on October 1, 2012.  SAC ¶18 & Ex. 6.

The corrective notice explained that the June 22, 2012 domestic relations order was not a QDRO because it purported to provide plaintiff with a "*Separate* Interest Benefit," SAC, Ex. 6 at

---

[4] The Order is titled "Amended First Qualified Domestic Relations Order."  However, the state court's use of the term "Qualified Domestic Relations Order" does not make it a QDRO in the absence of the order meeting all of ERISA's QDRO requirements.  *See* 29 U.S.C. § 1056(d)(3)(C)-(D).  The Order itself acknowledges this, stating that it remains subject to amendment "for the purpose of establishing . . . its qualification as a QDRO, so long as the amendment does not require the Plan to provide any type or form of benefit not otherwise available under the Plan."  SAC, Ex. 4 at ECF p. 6.  Thus, the June 22, 2012 order is accurately understood and described as merely a domestic relations order.

ECF p. 2, under which plaintiff would have been allowed to elect a lump-sum *form* of benefit, Ex. B, QDRO Procedures at p. 1. However, because the Plan was already in "pay status" based on Muammar's June 14, 2011 election of a 100% Joint and Survivor Annuity, the corrective notice clarified that plaintiff could receive only a "*Shared* Interest Benefit." SAC, Ex. 6 at ECF p. 2. A Shared Interest Benefit allows the alternate payee (here, plaintiff) to take over the monthly payments *already being made* to the Plan participant (here, Muammar); it does not allow the alternate payee to elect a lump-sum form of benefit instead. *See id.*; *see also* Ex. B, QDRO Procedures at pp. 1-2. In short, because the domestic relations order purported to entitle plaintiff to a Separate Interest Benefit—and thus would allow a benefit "form" or "option" not available under the Plan—Vanguard concluded that it failed the QDRO requirements.

Nevertheless, Vanguard simultaneously provided detailed instructions for how the June 22, 2012 domestic relations order could be amended to satisfy the QDRO requirements. The corrective notice explained that Section 3 of the order should state that plaintiff is entitled to receive "an amount equal to [up to 100%] from the monthly amount otherwise payable to [Muammar]" as of May 1, 2012, and continuing for life. SAC, Ex. 6 at ECF p. 2. Vanguard also provided plaintiff with a "Model QDRO," "contain[ing] the language" necessary to satisfy "both the statutory requirements regarding QDROs and the terms of the Plan." *Id.*

Plaintiff did not submit a revised domestic relations order until nearly two years later on August 14, 2014. SAC, Ex. 8. The revised order, however, continued to include language for a Separate Interest Benefit (rather than a Shared Interest Benefit) and thus remained deficient, as Vanguard explained on October 15, 2014. SAC, Ex. 9. Nevertheless, Vanguard once again provided instructions for how plaintiff could revise the order to satisfy the Plan and ERISA's

7

QDRO requirements, and, in turn, allow her to begin receiving benefits under the Plan immediately. *Id*. Plaintiff responded by filing this action.

## ARGUMENT

I.  **Standard of Review.**

Rule 12(c) "permits a party to move for judgment after the complaint and answer have been filed by the parties." *Buchanan-Moore v. Cnty. of Milwaukee,* 570 F.3d 824, 827 (7th Cir. 2009). Under Rule 12(c), the Court applies the same standard applied to motions under Rule 12(b)(6) and may properly consider the pleadings submitted by the parties and the documents attached to or referenced in the pleadings. *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452-53 (7th Cir. 1998). Thus, a plaintiff's claims must be dismissed under Rule 12(c) if they are not supported by sufficient "factual matter" to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009) (affirming dismissal of claims where complaint lacked sufficient "factual content" to "'nudg[e]'" the claims "'across the line from conceivable to plausible'"). While the Court must accept as true all well-pled factual allegations, it need not credit factual allegations that are contradicted by documents attached to the pleadings when ruling on a Rule 12(c) motion. *See, e.g.*, *Caremark, Inc.*, 474 F.3d at 466.

II. **Count I Fails Because It Seeks To Recover a Lump-Sum Benefit Not Available Under The Plan.**

In Count I, plaintiff seeks to recover, pursuant to 29 U.S.C. § 1132(a)(1)(B), benefits under the Plan as though the June 22, 2012 domestic relations order were a QDRO. SAC ¶¶28-29. In other words, she seeks an award allowing her to recover the $884,647.57 payment she alleges to be the lump-sum value of Muammar's accrued benefit under the Plan as of June 30,

2011. SAC ¶¶9, 36. Because the Plan itself plainly forecloses the relief plaintiff seeks, Count I should be dismissed.

Section 502(a)(1)(B) of ERISA, codified at 29 U.S.C. § 1132(a)(1)(B), creates a cause of action through which participants or beneficiaries may seek to recover benefits—*but only those benefits*—to which they are entitled under the terms of an ERISA-covered plan. *Senese*, 237 F.3d at 825; *see also, e.g.*, *Clair v. Harris Trust and Sav. Bank*, 190 F.3d 495, 497 (7th Cir. 1999) ("[O]nly benefits specified in the plan can be recovered in a suit under [§ 1132](a)(1)(B)."); *Am. Serv. & Prod., Inc. v. Aetna Health Ins. Co.*, 2011 WL 2415172, at *4 (N.D. Ill. June 9, 2011) ("[R]elief beyond benefits due to the participant or beneficiary under the terms of his plan[] are not available under § 1132(a)(1)(B)."). The question under Count I, then, is whether the Plan entitled plaintiff to a lump-sum form of benefit when she submitted her June 22, 2012 domestic relations order.

The answer is no. Because Muammar elected to receive his accrued benefit in the form of a joint and survivor annuity commencing July 1, 2011—long before plaintiff's divorce and the subsequent June 22, 2012 domestic relations order—the Plan makes clear that a lump-sum form of benefit was no longer available when plaintiff submitted her domestic relations order. Ex. A, Plan § 4.01(a) ("In no event may an election be revoked or changed in any manner whatsoever after the date [benefit] payments commence."). Put differently, as of July 1, 2011, no domestic relations order submitted by plaintiff could be deemed a QDRO under ERISA or the Plan if it purported to entitle plaintiff to a form of benefit other than the annuity Muammar had already elected and began to receive. *See* 29 U.S.C. § 1056(d)(3)(D)(i); Ex. A, Plan §§ 8.06-8.07.

This should come as no surprise to plaintiff. Indeed, her own June 22, 2012 domestic relations order made clear that it could not "require the Plan to provide any type or form of

9

benefit, or any option, not otherwise provided for under the Plan" and that, "in the event of a conflict between the [order and the Plan,] *the terms of the Plan prevail*." SAC, Ex. 4 at ECF p. 5 (emphasis added). In other words, the plain language of plaintiff's own domestic relations order forecloses the very lump-sum payment she hopes to secure through Count I. Furthermore, as the documents attached to the SAC make clear, Vanguard repeatedly explained the problems with the June 22, 2012 domestic relations order to plaintiff, and provided her detailed instructions for how to revise the order to comply with the Plan and ERISA. SAC, Exs. 6 & 9.

At bottom, plaintiff is asking this Court to enforce the June 22, 2012 domestic relations order regardless of whether the form of benefits it provides was actually available under the Plan. But ERISA's anti-alienation provisions forbid that result. Under those provisions, the Court may not enforce a domestic relations order unless the order satisfies all of the technical and substantive requirements of a *qualified* domestic relations order, including that the order "not require the plan to provide any *type or form of benefit, or any option,* not otherwise available under the plan[.]" 29 U.S.C. §§ 1056(d)(3)(D)(i) (emphasis added). Because the June 22, 2012 domestic relations order does just that, it has no legal effect whatsoever on the Plan and cannot support plaintiff's claim in Count I.

**III.   Count II Fails Because It Merely Seeks a Declaration That Plaintiff Is Entitled to the Same Benefits That Are Foreclosed Under Count I.**

In Count II, plaintiff seeks a declaratory judgment "that she is immediately entitled to the full cash value of the Retirement Account as of November 4, 2011 payable in one lump sum," and awarding her corresponding benefits under the Plan. SAC ¶32. The only apparent difference between the relief plaintiff seeks in Count I and Count II is that in the latter she seeks a lump-sum payment calculated based on Muammar's accrued benefit as of November 4, 2011, rather than June 30, 2011. *Compare id. with* SAC ¶29 & Ex. 4. However, as already discussed

with respect to Count I above, because Muammar elected and began receiving monthly annuity payments effective July 1, 2011, plaintiff simply has no cognizable basis for claiming entitlement under the Plan to a lump-sum form of benefit. *See, e.g.*, *Weinger v. Klais & Co., Inc.*, 108 F.3d 86, 92 (6th Cir. 1997) (dismissing a similar claim for declaratory relief because "plaintiff . . . merely asserted a form of relief, not a cause of action. Plaintiff is not entitled to this relief in the absence of a viable claim" for benefits under § 1132(a)(1)(B)).[5]

## IV. The Pleadings Likewise Demonstrate That Plaintiff's Fiduciary Breach Claims Fail.

In Count III, plaintiff seeks the same lump-sum payment discussed above based on her allegations that Vanguard breached its (alleged) fiduciary duties under ERISA by: (1) "allowing the status of the [Muammar's Plan account] to be changed after receiving notice that the [account] was the subject of a pending divorce;" and (2) "failing to abide by the terms of the [June] 22, 2012 [domestic relations order] that was [initially] qualified by Vanguard, and entered in the Divorce." SAC ¶¶ 34, 35.[6] Neither of these theories states a plausible claim.[7]

---

[5] To the extent Count II implies that the November 4, 2011 order (SAC, Ex. 1) dissolving plaintiff's marriage to Muammar constitutes a QDRO, it likewise fails. Even a cursory review of that document establishes that it does not satisfy ERISA's QDRO requirements. For example, the order does not "clearly specif[y]" the "amount or percentage of the participant's benefits to be paid" or the "number of payments" to be made to plaintiff. 29 U.S.C. § 1056(d)(3)(C)(ii)-(iii). Moreover, assuming the order contemplates payment of benefits in a lump-sum form (which is unclear), then it suffers the same fatal flaw as plaintiff's June 22, 2012 domestic relations order. *See supra* at 8-10.

[6] Section 404(a) of ERISA, codified at 29 U.S.C. § 1104(a), sets forth the various fiduciary duties plan fiduciaries owe to plan participants and beneficiaries. These duties include a duty of loyalty to act "for the exclusive purpose of . . . providing benefits to participants and their beneficiaries," § 1104(a)(1)(A)(i), and a duty of care, which requires fiduciaries to exercise the "care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use[,]" § 1104(a)(1)(B). In addition, fiduciaries are required to discharge their duties at all times "in accordance with the documents and instruments governing the plan." § 1104(a)(1)(D).

[7] Vanguard denies that it was or is a Plan fiduciary within the meaning of ERISA. Answ. to SAC, Add'l Defenses ¶4. To the contrary, The Vanguard Group, Inc. was "retained by Saudi Aramco" merely "to perform *ministerial* functions" described in those procedures. Ex. B at p. 1 (emphasis added). Meanwhile, Vanguard Marketing Corporation had no role whatsoever concerning the Plan. Nevertheless, even assuming Vanguard were a Plan fiduciary as Vanguard does for purposes of this motion only, plaintiff's claims in Count III fail as a matter of law.

11

Plaintiff's first fiduciary-breach theory is predicated on a supposed factual scenario the pleadings refute. Specifically, this theory is based on plaintiff's allegation that "at some point between November 11, 2011 and October 1, 2012," Vanguard allowed Muammar to elect benefits in the form of a joint and survivor annuity. SAC ¶19. Plaintiff presumably contends that Vanguard violated the Plan's QDRO procedures by neglecting to place a "hold" on Muammar's account upon receipt of the November 4, 2011 order dissolving their marriage, which would have prevented Muammar from thereafter electing to receive his benefits. *See* Ex. B, QDRO Procedures at 2-5 (describing hold procedures).

However, as the documents attached to the pleadings demonstrate, Muammar elected and began receiving Plan benefits several months *before* the November 4, 2011 divorce. The Court should therefore disregard plaintiff's contradictory allegations and, in turn, the fiduciary-breach claim she seeks to build upon them. *See, e.g., Caremark, Inc.*, 474 F.3d at 466 (documents attached to pleadings "trump the facts or allegations presented in the complaint"); *Perkins v. Silverstein*, 939 F.2d 463, 469 n. 4 (7th Cir. 1991) ("In determining the sufficiency of the complaint we must rely on the exhibits whenever the allegations of the complaint are materially inconsistent with those exhibits.").

Nor can plaintiff plausibly show that Vanguard violated any fiduciary duty by failing to prevent Muammar from electing joint and survivor annuity benefits in June 2011. Under ERISA's anti-alienation provisions, a plan administrator must "segregate" a participant's plan benefits only upon receipt of a "domestic relations order" and only for a limited period while the administrator evaluates whether the order is a QDRO. 29 U.S.C. § 1056 (d)(3)(H)(i). Similarly, the Plan's QDRO procedures only permit Vanguard to place a temporary "hold" on a participant's account upon receipt of a domestic relations order, an active restraining or

injunctive order, a divorce decree or property settlement agreement, or specific written instruction from the Plan sponsor's legal department. Ex. B, QDRO Procedures at 2. Thus, not only are the circumstances in which Vanguard is permitted to interfere with a participant's election of benefits extremely limited, but the SAC is devoid of allegations showing that those circumstances were met in June 2011.

To the contrary, the documents attached or referenced in the pleadings demonstrate that, as of June 2011, Vanguard had no authority under ERISA or the QDRO Procedures to deny Muammar his right under the Plan to elect and begin receiving benefits. Indeed, any action by Vanguard to prevent Muammar from making that election would not only have been inconsistent with the fiduciary duty to act "in accordance with the documents and instruments governing the plan," 29 U.S.C. § 1104(a)(1)(D), but it also would have violated ERISA's anti-alienation provisions, 29 U.S.C. § 1056(d)(1). In short, the pleadings and relevant statutory authorities demonstrate that plaintiffs' first theory of fiduciary breach does not state a plausible claim for relief and should be dismissed.

Plaintiffs' second theory—that Vanguard failed to cause the Plan to honor the terms of the June 22, 2012 domestic relations order—fares no better. As discussed *supra* at 8-10, the June 22, 2012 domestic relations order was not a QDRO because it would have provided plaintiff with a benefit form or option that was not available to her under the Plan. In effect, then, plaintiff is alleging that Vanguard breached its fiduciary duties through its failure to violate ERISA's anti-alienation provisions by somehow causing the Plan to enforce a state court order that is not a QDRO. Such allegations do not state a plausible claim for relief. *See, e.g., Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2472 (2014) (recognizing that ERISA's fiduciary duties do not require fiduciaries to violate the law); *Retirement Committee of DAK*

*Americas LLC v. Smith*, 2015 WL 5714579, at *17 (E.D.N.C. Sept. 29, 2015) (rejecting ERISA breach of fiduciary claims where lump-sum payment plan beneficiaries sought "would result in [lump-sum] payment of benefits inconsistent with the written [p]lan").

That Vanguard erred by initially indicating that the June 22, 2012 domestic relations order satisfied the QDRO requirements does not alter this conclusion. Plaintiff's own allegations show that Vanguard promptly addressed this error by way of a corrective notice describing the deficiencies in the June 22, 2012 order and instructing plaintiff on how to correct them. SAC ¶18 & Ex. 6. But regardless, ERISA does not impose a duty of *infallibility*. To the contrary, the Seventh Circuit has repeatedly held that comparable (indeed, far worse) administrative errors do not support a fiduciary breach claim. *See, e.g.*, *Mondry v. Am. Family Mut. Ins. Co.*, 557 F.3d 781, 805 (7th Cir. 2009) (holding plan administrator did not breach any fiduciary duty by erroneously denying a participant's claim for benefits by relying on the administrator's internal policies rather than the plan); *Vallone v. CNA Fin. Corp.*, 375 F.3d 623, 640-42 (7th Cir. 2004) ("[W]hile there is a duty to provide accurate information under ERISA, negligence in fulfilling that duty is not actionable."); *Schoonmaker v. Employee Savings Plan of Amoco Corp. and Participating Cos.*, 987 F.2d 410, 414-15 (7th Cir. 1993) (holding plan administrator's "unauthorized modification of the [plan's] QDRO procedures," which caused a participant to suffer "significant losses," did not rise "to the level of a breach of fiduciary duty," because despite its error, the administrator's "actions were consistent with [its] duty to protect the interests of [p]lan beneficiaries as well as participants"); *Lister v. Stark*, 1989 WL 88241, at *6 (N.D. Ill. Aug. 1, 1989) (dismissing fiduciary breach claim based on erroneous interpretation of plan provisions concerning calculation of plan benefits, because "[t]o breach one's fiduciary

duty, an ERISA trustee must do more (and worse) than wrongfully construing the plan provisions"). This Court should do the same.

## CONCLUSION

For all of the foregoing reasons, Vanguard respectfully requests that the Court enter judgment in its favor as to all of Plaintiff's claims and dismiss the Second Amended Complaint with prejudice.

Dated: October 14, 2015

THE VANGUARD GROUP, INC. AND
VANGUARD MARKETING
CORPORATION

By: */s/ Christopher J. Boran*
      One of Their Attorneys

Christopher J. Boran
Kevin F. Gaffney
Morgan, Lewis & Bockius LLP
77 West Wacker Drive, 5th Floor
Chicago, IL  60601-5094
+1.312.324.1000

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies the foregoing document was filed on October 14, 2015 with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following counsel of record for the plaintiff:

Ariel Weissberg
Edward Khatskin
WEISSBERG & ASSOCIATES
401 South LaSalle Street
Suite 403
Chicago, IL 60605
(312) 663-0004
ariel@weissberglaw.com
john@weissberglaw.com

Howard Lawrence Ward, Sr.
RAFATI & WARD, PC
744 North Wells Street
Suite 200
Chicago, IL 60610
312-228-6200
howardlward@sbcglobal.net
*Attorneys for Plaintiff*

                                                */s/ Christopher J. Boran*